UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WAYNE LaFOUNTAIN,

        Plaintiff,                                  Hon. Paul L. Maloney

v.                                                   Case No. 1:08 CV 263

RANDALL MIKKELSON, et al.,

        Defendants.
_____/


**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment, (dkt. #15), and Defendant Richardson's Motion for Summary Judgment and Amended Motion for Summary Judgment, (dkt. #20, 23). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action **dismissed**.


**BACKGROUND**

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On October 25, 2004, Plaintiff "signed an attendance sheet" to attend the law library on October 28, 2004. On the morning of October 28, 2004, Plaintiff learned that the computer-generated "itinerary" authorizing him to attend the law library had not been generated. Plaintiff then approached the "unit desk" and asked a corrections officer to telephone the library to obtain confirmation that he was authorized to attend the law library that morning. The officer attempted without success to communicate with anybody at the law library.

Approximately five minutes later, Plaintiff asked Defendant Mikkelsen to telephone the law library. When Mikkelsen refused, Plaintiff informed him that he needed to attend the library because he "was attempting to conduct legal research concerning a pending law-suit." Mikkelsen still refused to telephone the law library. Plaintiff then informed Defendant Mikkelsen that he would "go out of the unit, at the 'half-time' bell, in order to 'find out what is happening with the law-library.'" Defendant Mikkelsen instructed Plaintiff "not to go to the library" without a pass.

Approximately five minutes later, the "half-time" bell rang, signaling that Plaintiff (and most other prisoners) could enter the prison yard. Plaintiff entered the prison yard where he questioned two prisoners "as to the status of the prison law-library." When these two prisoners informed Plaintiff that "they did not know," Plaintiff "proceeded to the school/LTA building, in which the library room is situated." When he arrived at this building, Plaintiff "opened the door and, without entering the building, asked the school officer" if the law library was open and if he could speak with the librarian. The school officer informed Plaintiff that the library was open, but that he could not speak with the librarian. Plaintiff was instructed to return to his unit and obtain a pass if he wanted to attend the law library.

Immediately after exiting the school/LTA building, Plaintiff encountered a prisoner library clerk, who informed Plaintiff that the law library was "nearly empty" and that "neither of the librarians were on the phone." Plaintiff returned to his unit and informed Defendant Mikkelsen that the "law-library was open and that both librarians were on duty, and that neither was on the phone." Plaintiff then asked Mikkelsen to telephone the library to confirm that he was authorized to attend that morning.

At this point, Defendant Rittenhouse "accused Plaintiff of being out-of-place, by being in the library room absent the required pass." Plaintiff explained to Defendants Mikkelsen, Rittenhouse, and Hargrave that he had not entered "the library nor the school building." Another corrections officer subsequently telephoned the library and learned that Plaintiff had, in fact, signed the attendance sheet to attend the law library that morning. Plaintiff was then issued a pass authorizing him to attend the law library. Defendant Rittenhouse again accused Plaintiff of being out-of-place and threatened to issue Plaintiff a misconduct ticket. Plaintiff asserted that because he had not entered the school/LTA building, any such ticket would constitute a "false misconduct report for which she could be sued."

Later that day, Defendant Mikkelsen issued Plaintiff a misconduct ticket, charging him with (1) being out-of-place and (2) disobeying his direct order not to go to the law library without a pass. Plaintiff was found not guilty of being out-of-place, but was found guilty of disobeying Mikkelsen's direct order.

Plaintiff subsequently initiated the present action against Defendants Mikkelsen, Hargrave, and Rittenhouse. Plaintiff asserts that Defendant Mikkelsen falsely charged him with the misconduct violations for improper retaliatory purposes. Plaintiff alleges that Defendants Rittenhouse and Hargrave "aided and abetted" Defendant Mikkelsen. Defendants now move for summary judgment. For the reasons articulated below, the Court recommends that Defendants' motions be granted and Plaintiff's action dismissed.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty*

*v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**I.        Claims Against Defendant Mikkelsen**

Plaintiff asserts that Defendant Mikkelsen falsely charged him with being out-of-place and disobeying a direct order for improper retaliatory purposes. The elements of a First Amendment retaliation claim are as follows: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Before evaluating whether Plaintiff's retaliation claim satisfies these elements, the Court will address Defendant Mikkelsen's argument that Plaintiff's retaliation claim fails to satisfy the "favorable termination requirement." Plaintiff asserts in his complaint that as a result of being found guilty of disobeying a direct order, he was deprived of "earned good time."

As Defendant correctly asserts, to the extent that the duration of Plaintiff's incarceration was impacted by his major misconduct conviction, Plaintiff cannot challenge such in a § 1983 action unless he first secures a reversal of the misconduct conviction. *See Wilkinson v. Dotson*, 125 S.Ct. 1242, 1248 (2005) ("a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration") (citations omitted). On the other hand, where a claim asserted in a § 1983 action "has only a *potential* effect of the amount of time a prisoner serves," this limitation is inapplicable. *Eby*, 481 F.3d at 439.

Plaintiff claims that Defendant Mikkelsen falsely charged him with a misconduct violation for retaliatory purposes. Were Plaintiff to prevail on such claim it would imply that his major misconduct conviction was invalid. Thus, if Plaintiff's conviction for disobeying a direct order resulted in an increase in his sentence, his claim that he was falsely charged with disobeying a direct order would be subject to dismissal unless he demonstrates that his conviction on this charge has been overturned.

In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the Sixth Circuit examined the effect of a major misconduct violation on the sentence of a Michigan prisoner. In that case, Eby charged Thomas with committing a major misconduct violation. *Id.* at 435-36. Thomas was convicted of the charge. *Id.* at 436. Thomas subsequently initiated a § 1983 action alleging that Eby charged him with misconduct in retaliation for exercising his First Amendment rights. *Id.* at 435-37. The district court dimissed Thomas' claim on the ground that Thomas could not maintain his retaliation claim unless he first secured a reversal of his major misconduct violation. *Id.* at 436-37.

On appeal, the *Eby* court recognized that "the effect of disciplinary proceedings on good-time credits is a matter of state law or regulation." *Id.* at 439 (quoting *Muhammad v. Close*, 540 U.S. 749, 754 (2004)). The court then observed that under Michigan law, there exists both a "'good time' program" as well as a "less-generous 'disciplinary credit' scheme." *Eby*, 481 F.3d at 439 (citing Mich. Comp. Laws § 800.33). Pursuant to the "disciplinary credit scheme," inmates "shall not earn disciplinary credits. . .during any month in which the prisoner is found guilty of having committed a major misconduct." *Eby*, 481 F.3d at 439 (quoting Mich. Comp. Laws § 800.33(5)).

The Michigan Department of Corrections argued that because Thomas' "loss of disciplinary credits necessary lengthens his sentence," his retaliation claim must be dismissed unless his major misconduct conviction had been overturned. *Eby*, 481 F.3d at 439. The Sixth Circuit disagreed, however, noting that under Michigan law disciplinary credits "do not determine when a sentence expires or is completed, but only when a prisoner is subject to parole or discharge." *Id.* at 440. The court concluded, therefore, that "success in Thomas' § 1983 claim would not necessarily affect the duration of his sentence because prison officials would retain discretion regarding whether to grant him parole." Thus, the favorable termination requirement did not apply to Thomas' retaliation claim. *Id.*

Defendant Mikkelsen has not indicated whether Plaintiff participates in the "good time" program or the "disciplinary credit" program. It *appears* that Plaintiff was not incarcerated until after December 30, 1982,[1] which would subject him to the "less generous" disciplinary credit program examined by the *Eby* court. Defendant Mikkelsen has not addressed this point, but employs language in his brief consistent with Mich. Comp. Laws § 800.33(5), the provision applicable to the disciplinary

---

[1] *See* Michigan Department of Corrections, Offender Tracking Information System, available at http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=171248 (last visited on January 18, 2009).

credit scheme. In the absence of evidence that Plaintiff is not subject to the disciplinary credit program, the Court is bound by the analysis articulated by the *Eby* court. Accordingly, the Court concludes that the "favorable termination requirement" is inapplicable to Plaintiff's retaliation claim.[2] Defendant Mikkelsen is entitled to summary judgment, however, because Plaintiff's retaliation claim fails to satisfy the three elements identified above.

          1.      Protected Conduct

Defendant Mikkelsen asserts that Plaintiff was not engaged in protected conduct. Defendant first asserts that Plaintiff was not engaged in protected conduct because his conduct violated prison rules. The Court recognizes that "if a prisoner violates a legitimate prison regulation, he is not engaged in protected conduct." *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Thus, Plaintiff's conduct of entering the school/LTA building does not constitute protected conduct.

As indicated above, Plaintiff alleges that Defendant Rittenhouse threatened to issue him a misconduct ticket for being out-of-place, to which Plaintiff responded that any such ticket would constitute a "false misconduct report for which she could be sued." Defendant Mikkelsen asserts that Plaintiff's conduct in this regard does not constitute protected conduct. The Court disagrees.

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims." *Thaddeus-X*, 175 F.3d at 391 (citations omitted). This protection also guarantees to inmates the right

---

[2] The Court further notes that even if the favorable termination requirement apply in this matter, it would provide Defendant Mikkelsen with only partial relief. While it would bar Plaintiff's claim that he was charged with disobeying a direct order for retaliatory purposes, it would not bar Plaintiff's retaliation claim concerning the charge that he was out-of-place because Plaintiff was found not guilty of this charge.

to file non-frivolous grievances. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (because a prisoner's constitutional right to access the courts extends to established prison grievance procedures, filing non-frivolous grievances constitutes protected conduct).

While Plaintiff did not have reason to grieve or sue Defendant Rittenhouse, because she did not carry out her threat to charge Plaintiff with being out-of-place, the Court finds Plaintiff's comments to Rittenhouse constitute protected conduct. In the context of a retaliation claim, the Court fails to discern a relevant distinction between the actual filing of a grievance or lawsuit and statements by a prisoner that he will pursue such relief if wronged by prison officials. *See Hightower v. Vose*, 1996 WL 516123 at *1 (1st Cir., Sept. 12, 1996) (indicating that expressions of intent to file a grievance constitutes protected conduct); *Figueroa v. Regan*, 2003 WL 1751612 at *4 (E.D. Pa., April 3, 2003) (same). As noted previously, Plaintiff was found not guilty of being out-of-place. Thus, Defendants cannot on the present record establish that any attempt by Plaintiff to obtain relief for being charged with being out-of-place would have been frivolous. Thus, to the extent that Plaintiff expressed to Defendant Rittenhouse his intent to protect his rights if charged with being out-of-place, the Court finds that such constitutes protected conduct.

Plaintiff also suggests in his complaint that Defendant Mikkelsen retaliated against him because Plaintiff had previously filed a grievance against another corrections officer, Anthony Martin, which was then pending. Defendant Mikkelsen asserts that such cannot constitute protected conduct because no such grievance was pending as of October 28, 2004. While Defendant has presented evidence that purports to establish that certain grievances against Martin were resolved prior to October 28, 2004, such hardly establishes that there were not other grievances against Martin pending as of

October 28, 2004. As to this question, Defendant offers no evidence. The Court, concludes, therefore that Plaintiff's alleged filing of a grievance against Anthony Martin constitutes protected conduct.

Defendant's argument that Plaintiff was not engaged in protected conduct also fails to recognize that throughout the incident on October 28, 2004, described above, Plaintiff was attempting to secure authorization to use the law library to conduct legal research on what he alleges was a lawsuit that he was then pursuing. Defendant Mikkelsen has presented no evidence that Plaintiff's assertion in this regard is inaccurate or that such lawsuit was frivolous. In sum, the Court finds that Plaintiff was engaged in the following protected conduct: (1) informing Defendant Rittenhouse that he would take action to protect his legal rights if she charged him with being out-of-place; (2) filing a grievance against Anthony Martin; and (3) attempting to secure authorization to use the law library in support of legal action he was then pursuing.

2.  Adverse Action Which Would Deter a Person of Ordinary Firmness

Plaintiff asserts that in retaliation for engaging in protected conduct, Defendant Mikkelsen falsely charged him with two misconduct violations. As the Sixth Circuit has indicated, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). As the *Bell* court further stated, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*." *Id.* at 603. Accordingly, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.* Charging an inmate with a major

misconduct violation constitutes neither an inconsequential nor de minimis action. Accordingly, the Court finds that there exist unresolved questions of fact regarding this particular element of the analysis.

### 3. Causal Connection

Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). The assertion of "[c]onclusory allegations of retaliatory motive 'with no concrete and relevant particulars,'" fails to raise a genuine issue of fact requiring a trial. *Huff*, 2006 WL 2039983 at *7 (quoting *Birdo v. Lewis*, 1996 WL 132148 at *1 (6th Cir., Mar. 21, 1996)). Accordingly, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if Defendant demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

While Plaintiff asserts in conclusory fashion that he was retaliated against, he has failed to articulate arguments or present evidence demonstrating that his protected conduct was a factor in

Defendant Mikkelsen's decision to charge him with a misconduct violation. Plaintiff has failed to allege facts or present evidence establishing a "chronology of events from which retaliation may plausibly be inferred." There is nothing in the record to suggest that Defendant Mikkelsen charged Plaintiff with the misconduct charges because of Plaintiff's comments to Defendant Rittenhouse or because Plaintiff was attempting to obtain authorization to attend the law library.

As for the allegation that Mikkelsen charged Plaintiff with misconduct violations in retaliation for Plaintiff having filed a grievance against Anthony Martin, Plaintiff asserts that he "directly observed Anthony Martin as he stood gossiping about Plaintiff with Defendants Mikkelsen and Hargrave." Even if true, such conduct hardly establishes the requisite causal connection between Plaintiff's protected conduct and Defendant Mikkelsen's allegedly retaliatory conduct.

Plaintiff further asserts that Defendant Hargrave antagonized him in the very same manner as Anthony Martin, suggesting that such establishes the necessary causal connection. First, even if true, such does not articulate a chronology from which retaliation can be inferred. Even if the Court assumes that Anthony Martin antagonized Plaintiff as alleged and that Defendant Hargrave was aware of such and intentionally imitated Martin when he allegedly antagonized Plaintiff, the Court fails to discern how such establishes (or even suggests) that Defendant *Mikkelsen* charged Plaintiff with a misconduct violation because of a grievance Plaintiff filed against Anthony Martin. Plaintiff fails to articulate how alleged misconduct by Defendant Hargrave demonstrates retaliatory conduct by Defendant Mikkelsen. Furthermore, even if such did establish the requisite causal connection, Defendants Mikkelsen and Hargrave have submitted affidavits in which they deny Plaintiff's allegations that Hargrave acted improperly toward Plaintiff. (Dkt. #16, Exhibits 1 and 7). Plaintiff has submitted no evidence refuting Defendants' assertions in this regard.

In sum, Plaintiff's claim of retaliation is premised entirely on "bare allegations of malice," as Plaintiff has failed to allege facts or submit evidence from which retaliation can plausibly be inferred. The record instead demonstrates that Plaintiff was charged with misconduct violations for engaging in conduct that Plaintiff admits he committed. The Court recommends, therefore, that Defendant Mikkelsen's motion for summary judgment be **granted**.

**II.        Claims Against Defendants Hargrave and Rittenhouse**

Plaintiff asserts that Defendants Hargrave and Rittenhouse "aided and abetted Defendant Mikkelsen in the general plan and agreement" to retaliate against him. Defendants are entitled to relief for two reasons. First, Plaintiff has failed to allege facts that Defendants Hargrave and Rittenhouse played any role in Defendant Mikkelsen's decision to charge Plaintiff with a misconduct violation. Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). Moreover, as discussed above, the Court concludes that Defendant Mikkelsen did not retaliate against Plaintiff. Accordingly, the allegation that Defendants Hargrave and Rittenhouse "aided and abetted" Defendant Mikkelsen in conduct that did not violate Plaintiff's rights, likewise fails. The Court recommends, therefore, that Defendants Hargrave and Rittenhouse are entitled to summary judgment.

## **CONCLUSION**

As discussed herein, the Court recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #15), be **granted**; and Defendant Richardson's <u>Motion for Summary Judgment</u> and <u>Amended Motion for Summary Judgment</u>, (dkt. #20, 23), be **granted**; and Plaintiff's action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 21, 2009

  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge